All right, we'll call our first case of the day, Pack v. Attorney General. Good morning, Your Honors. Judge Rendell, and may it please the Court. Ben Winograd for the petitioner. If I could please reserve three minutes for rebuttal. As granted. This case presents a follow-up question to the Court's 2012 decision in Hanif v. Attorney General. In Hanif, the Court held that the aggravated felony bar in H. U.S.C. 1182-H only applies to aliens who were initially admitted as lawful permanent residents at a port of entry. And Hanif was not. He was illegally admitted, correct? Correct. But your client was legally admitted, correct? Correct. So how does Hanif have any bearing? Well, no, because the holding of Hanif was that all aliens who are not admitted as lawful permanent residents are not barred by commission of an aggravated felony. But your client was admitted as an LPR. Well, that is the question. The question is whether he was admitted as an LPR or whether he was admitted as a conditional permanent resident, whether those statuses are distinct. I can't find in the statute support for your proposition. And indeed, various provisions of the statute talk about obtaining status of LPR. They obtain that status, but that status could be lost or terminated if it is a conditional status. It could be lost or terminated in those two years. But I can't find anything that says that conditional status is something other than LPR status upon admission. We would point the court to the definition of the phrase lawfully admitted for permanent residence at 8 U.S.C. 11-01-820. And our submission is that conditional resident status is simply irreconcilable with that definition. Because of the oxymoronic nature of saying someone is conditional on the one hand and permanent on the other. Correct. It is somewhat of a contradiction in terms. But Congress has, does it not, the power to resolve the apparent contradiction in terms through its definitions? It does, but we believe the very nature of the definition excludes conditional permanent residence, and for two reasons. The first, as Your Honor alluded to, the fact that they are not truly admitted on a permanent basis. Instead, they must take affirmative steps in order to maintain their status. But there are several provisions, though, where Congress has said they are to be treated the same. 1186-AA1, AA2, C2A, C3B, H1, H2. They all favor the government's argument. Well, we think the only provision that uses the same language as Section 1182-H is 1186-AE. That provision states that conditional residents shall be considered to have been admitted as LPRs, but only for purposes of Subchapter 3 of the INA. That subchapter deals with provisions relating to naturalization. But can't that be read that it just makes totally clear that if someone who is a conditional LPR applies for naturalization, that there is no question but that they are eligible? Because otherwise there could be a question as to whether someone who is conditional is eligible for naturalization. So I don't think that's necessarily exclusive. That could be one reading, but we think that reading raises two questions. First, why in that provision limited to Subchapter 3 of the INA, when Congress could have verily said, for all purposes of this Act, aliens who are conditional permit residents shall be regarded as having been admitted as LPRs? That's just another way of saying Congress could have done it better. It doesn't mean that Congress did it wrong. True, but we think that it very least raises a plausible counter-argument. And we know for purposes... But most of the time you're in the land of ambiguity. Correct. Our position might... I would like to emphasize that this is the somewhat unusual case in which the agency's determination cannot be upheld under Step 2 of Chevron. The parties agree on this because the Board rested its decision on what it regarded as the clear intent of Congress. So if this Court finds the intent of Congress is not clear, the parties agree that a remand is warranted to allow the agency to address that ambiguity in the first instance. But let me read you just three specific provisions. 1186AC3C, notify the parties that shall terminate the permanent resident status of an alien spouse. 1186AC3D, an alien whose permanent resident status is terminated under subparagraph C. And then 1182AD2A, 90 days before the second anniversary of the aliens obtaining the status of lawful admission for permanent residence. Doesn't that all say that upon admission you get that lawful permanent resident status, but that because it's conditional something later can take it away? Isn't that a plain reading of the statute? No, our position would be all of those provisions are modified by 1186AA, which makes clear that someone who is admitted as an alien lawfully admitted for permanent residence is only given that status on a conditional basis. Okay, but they're given the status, but they have the status. They have that I am an LPR when I come in, and there's an alien spouse. I think what makes an LPR an LPR are two things. One, they are guaranteed that status unless and until the entry of a final administrative order of removal. A true LPR status cannot simply be terminated administratively by the government, unlike conditional LPRs who lose that status at the end of the conditional period if they have not complied with their statutory obligations. All right, they lose the status, but they had the status when they were admitted, did they not? Well, we think the fact that the status can simply be terminated means that the status that they possessed is not the same as true LPR status, which cannot be terminated unless an immigration judge finds that the person is removable. How does that have any bearing on the exception at issue here? How do you, I don't get it. Well, if we return to section 1182H, which is the waiver provision. Right, exactly. It says that no waiver shall be granted in the case of an alien who has previously been admitted to the United States. As an alien, lawfully admitted for permanent residence, and that's what happens here. You obtain the status, your client obtained that status upon admission, correct? No, our position is that he did not obtain that status. He obtained the status of a conditional permanent residence. Okay, but I'm saying to you that the three provisions that I read that says that the status can later be lost or terminated means that it did indeed exist upon admission. But our position is that the status, the phrase lawfully admitted for permanent residence, always has to be controlled by the statutory definition at 1101820, which in addition to using the word permanently also says such status not having changed. Now in this case, the petitioner has enjoyed three separate immigration statuses since he was admitted to the United States. Or substatuses, that's the point, right? If there's substatuses, then you lose. If there's a change in status, then the language you just read surely supports your position. Well, I mean, we would characterize them as distinct statuses. The immigration laws don't really contemplate aliens having more than one status at the same time. Well, it's not possible for a conditionally admitted LPR to be a subset of LPR? Perhaps, but we would say that subset cannot be squared with the language of 1101820. We would also point out that we are not the first party to advance this position. The board itself has advanced this decision in at least three prior unpublished decisions. Well, and you do a good job pointing out the government argued the opposite in Gallimore. Correct. And you threw me a curve at the beginning because when you said this case involves a prior decision of our court, I thought you mentioned Gallimore, not me. Because in fact, isn't it true, right, isn't it true that if we accept your position here, we're doing a 180 away from Gallimore? Let me preface it by saying you do a good job pointing out that the government argued the opposite in Gallimore, but the government lost that argument in Gallimore. And you do a good job in pointing out that the BIA was wrong to say what Gallimore held, because in fact Gallimore didn't hold what the BIA said. Nevertheless, the dicta in Gallimore is squarely in the government's favor. So we would have to do a 180 away from that dicta in Gallimore to accept your position, would we not? You would, Your Honor. But at the end of the day, it is dicta. But is it not a holding? Because we needed to answer that question. It is not. As to when he was adjusted to LPR. We had to answer that. At the end of the decision, the court says we reserve judgment. It says prudence, counsel's caution, and we reserve judgment on this question to allow the board to address it in the first instance. But we also said we can perceive of no reason why conditional permanent residence should not be deemed lawfully admitted for permanent residence as of the date their status is initially adjusted. That's pretty strong dicta. We do not dispute that. It's strong dicta, but dicta nonetheless. And I'll put it this way. If the board was not bound by this court's decision in Gallimore, then plainly this panel is not bound by the decision in Gallimore. Returning to my point about – All right, but you need to persuade us why we have to do the 180. We're not in the habit of zigging and zagging, at least not intentionally. This panel needs to give due deference to Gallimore, even if it's dicta. So what's your best argument as to why the 180 is required or just? Sure. I think the reasoning in Gallimore contained many of the same flaws as the reasoning of the board in this case. One is it cited 1186-18. We won't tell the panel you said so. Luckily, none of us were on the panel. None of you were, Your Honors. The panel cited 1186-AE without recognizing that the provision only related to the subchapter of the INA dealing with naturalization. Two, the panel in Gallimore referred to an agency regulation while reporting to determine the intent of Congress. We think it goes without saying that an agency should not be able to rely on its own regulations as a tool of statutory construction. Three, the court in Gallimore did not reference any of the provisions of the legislative history that we cited both to the board and to this court. The Congress report includes numerous references making clear that Congress believed that conditional resident status was distinct from and a precursor to full-fledged LPR status. It actually says at one point that, quote, instead of being admitted as permanent resident aliens, the spouses and children would have conditional status for their first two years after entering the United States. Now, the board did not address the legislative history, and the government simply states in a footnote that the court should not address it. So to the extent the court does consider it, the government has not disputed that it cuts decidedly in our favor. If the board has no further questions now, if I could please reserve the remainder of my time for rebuttal. All right, thank you. Good morning, Your Honors. May it please the court, Bernard Joseph for the Attorney General of the United States. The sole issue on appeal is whether or not Section 216 of the Immigration and Nationality Act, as the board decided, was plain. And they correctly determined that an alien is admitted as a lawful permanent resident on a conditional basis under 216. An alien has previously been admitted to the United States as an alien lawfully admitted for permanent residence. Therefore, is ineligible for a waiver under Section 216. How can you explain away the three non-presidential opinions of the board that seem to say to the contrary? Really, they're not doing us any favors here. I think the way to explain away non-presidential opinions is that the board took a look at it in light of this court's decision in Gallimore and came up with a precedential decision looking at the language of 216 and said that the statute was plain and that aliens that are admitted as lawful permanent residents on a conditional basis are barred from a waiver under 212H. It's similar to the government's prior argument in Gallimore, which the court told the government you were wrong. And going forward, the government's making a different argument at this point. Would you argue that the language in Gallimore is anything other than dicta? Since the court in Gallimore remanded the case to the board with instructions to look at it again, the government couldn't contend that that's a strongholding. And the government would agree with the panel that it's strong, if not persuasive, dicta at this point. Section 216 provides that an alien son or daughter, as defined in the statute, has obtained the status of an alien lawfully admitted for permanent residence on a conditional basis. That mirrors the language in Section 212H. The definition of an alien son or daughter is an alien obtains the status of an alien lawfully admitted for permanent residence, whether on a conditional basis or otherwise, by virtue of being the son or daughter of an individual through a qualifying marriage. Again, mirrors the language in 212H. Similarly, Section 216C3D, as the court pointed out, says that provisions governing the removal of an alien's conditions are effective as of the second anniversary of the alien obtaining the status of lawful admission for permanent residence. The plain language in the section sets forth that if certain criteria are met, conditions are removed two years after the alien's early admission as a lawful permanent resident. Obviously, if the alien was never admitted as a lawful permanent resident, it would be hard to determine when the clock would actually start. How do you view the provision that specifically addresses Section 3, the naturalization? I mean, surely there's mention here and there of whether conditional or not, and then there's a specific provision that for purpose of naturalization it shall be deemed the same. Doesn't that run contrary to the idea that it's universally understood that conditional status is the same? Well, I think as Judge Hartman pointed out, Congress certainly can do things better. But just the fact that they pointed something out in the section dealing with naturalization doesn't necessarily mean that it's binding in the sections dealing with other parts of the Immigration and Nationality Act. But if we accept your argument, are we not rendering that clause in Subchapter 3 superfluous? I think the court would be determining that that clause applies to Subchapter 3 and doesn't necessarily apply to the other subchapters for naturalization purposes. What if we find an ambiguity? Then what? If the court finds an ambiguity, then I agree with Petitioner's counsel. The proper course at this point would be to remand the matter back to the board for the board to address the ambiguity and at that point could determine how it interprets the statute based on the court's perceived ambiguity. Wouldn't we give deference to the agency's interpretation? There's certain levels of deference that the board's decision would get. The board may choose not to publish a decision and therefore there would be a level of deference. The court may issue a published decision with its definition of its resolving the ambiguities and the government contends that that would be entitled to Chevron deference. Well, what I'm talking about is HCFR 216.1 where it specifically says in the regulation all references within this chapter to lawful permanent residence apply equally to conditional permanent residence unless otherwise specified. Would we give that deference and say that therefore even though there's an ambiguity, it's the same basically? There's a certain level of deference that should be owed. However, the board's interpretation of its own regulations may not necessarily be entitled to the highest level of deference. Again, as we pointed out in our brief and as Joe Tardiman has pointed out, this court has looked at this language in their decision in Gallimore and in that case the court disagreed with the language or the argument set forth by the petitioner, I mean by the government and determined in that case that one, that section 216 equated conditional lawful permanent residence with full-fledged lawful permanent residence except to the extent, but only to the extent, that 216 prescribed additional obligations. The court also stated it could perceive of no reasons why conditional permanent residence should not be deemed lawfully admitted for permanent residence as of the date of their status is initially adjusted. And they also stated that the statutory and regulatory scheme appeared to grant. Appears to grant. Appears to grant. And then the next thing is we say, well, President, we're aware of no authority. Prudence counsels caution. So we said, you know, we can't see any reason and we don't see it, but, you know, we don't deal with this every day. Under Ventura we send it back to the people who do see it every day and probably understand better than we do. Correct? Correct. I think in Gallimore part of the reason, and I would say the main reason the court sent it back, was because there was a factual discrepancy in terms of exactly when the aggravated felony was committed. And the question was he was admitted as a conditional permanent or lawful permanent resident on a conditional basis in 1994. There was an adjustment in 96. The aggravated felony occurred in 95. The agency did not give that fact the importance that the court felt it should. That we felt it should, but we said we follow the course of Ventura. Do not at this time rule out the interpretation the Attorney General espouses. And it clearly had been, I'm not sure of the timing, but the BIA had viewed it differently. So it seems to me it's a pretty open question when we send it back. If the court sends it back because they perceive there's an ambiguity, then it is an open question. And then the board would have to interpret the statute. And then at that point the board could decide, yes, he is eligible to apply for this waiver. And then the board would move on to evaluating whether or not he meets the requirements for a waiver. Or the board could issue a decision interpreting the court's perceived ambiguity and determine that he falls under it or he doesn't. There seems to be a regulation right on point. There is a regulation right on point, Your Honor. And isn't that where the board would look in case of an ambiguity? I think the board would look to, certainly would look to the regulation. I think the board would reevaluate the court's holding or the court's decision in Gallimore. And if it's ambiguous, then I think the board would go to the other tools that they use. I'm curious as to why you are not suggesting, as I thought, that we would defer to the regulation that says for all purposes they should be treated together. I think that helps inform that there is an ambiguity. I guess I misunderstood your question to say if we do find an ambiguity, then should the board look to its own regulations to help interpret the statute? We don't feel that there is a need. Certainly the statute or the regulations here are instructive, but I don't think they are something the board necessarily relied on in terms of the interpretation of the statute. They looked at the plain language of the statute. In the plain language of the statute in 216 on repeated occasions in multiple sections, it talks about the alien being lawfully admitted to the United States as a permanent resident or for a permanent resident, which mirrors the language in 212H, and the government would contend that an alien who is admitted as a lawful permanent resident under 216 falls under the aggregated felony bar in section 212H. Therefore, the government contends that the petition for review should be denied. Thank you. That was not a signal for you to step down, sir. I'm sorry, Your Honor. That's easy for you to say. I thought you said okay. I thought we were finished. I think we are done. I'm sorry if you have no further questions. Thank you. Thank you very much. Mr. Winograd, doesn't your reading lead to an absurd result, and that is that LPRs who are not conditional will be barred if they have committed an aggravated felony? But if you're a conditional LPR, then you can do all you want, you know, and that exception doesn't apply. Your Honor, I think that argument was necessarily foreclosed by Hanif, which dealt with an alien who entered the country illegally. Illegally. Illegally. That's even more absurd. I was on the panel with Hanif, and, you know, the absurdity of that wasn't lost on me. But there was no language. I mean, I just don't know how you could say that someone who snuck into the country was admitted. But here you've got all kinds of statutory language, which I cited when you were first up here, that treats, despite what I would call the oxymoronic nature of conditional permanent, there's all kinds of statutory language that treats conditionally admitted LPRs as LPRs. Well, we would, again, I think it's clear that the panel is not inclined to rule for us at step one of Chevron, but we would submit that because of the oxymoronic nature of the idea of a conditional permanent resident, that the intent of Congress is simply unclear because of kind of the Janus-facing nature of the statutory scheme. And if the court finds that the intent of Congress is unclear, the parties agree that a remand would be warranted in this case. Why would we not defer to the regulation that says for all purposes they should be treated the same? Well, we think that under Chevron, the ultimate question is what is the intent of Congress? So the question is not what did the executive branch intend by the promulgation of a regulation, but what did Congress intend by the statute itself? Now, to the extent that this court looks to the regulation, we would say that it is ultra-virus to the extent that it conflicts with the definition of lawfully admitted for permanent residence at 1101-820. But under Chenery, we can't look to the regulation because the agency didn't. Correct, that as well, Your Honor, under Chenery. To respond to a few points that opposing counsel made, he mentioned when Your Honor asked how do you reconcile the three prior unpublished decisions, he said, well, now the board has overruled those with issuance of a precedential decision. However, in this decision, the court did not acknowledge any of those prior precedential decisions. And as Your Honor, Judge Rendell stated- Well, usually we don't either. We don't talk about our mistakes or the things that we haven't really worked that hard on. Sure, but you are an Article III court, not an agency. And as Your Honor said, in Cruz v. Attorney General, a 2006 decision, where there is a consistent pattern of administrative decisions on a given issue, we would expect the BIA to conform to that pattern or to explain its departure from it. That is true. The board has not done so in this case. We think for that reason alone, a remand would be warranted for further explanation. Interesting. Thank you. Thank you very much. The case was well argued. We'll take it under advisement.